UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | Criminal Action No. 3: 12-004-S-DCR |
| | ) | Civil Action No. 3: 13-7314-DCR-EBA |
| V. | ) | |
| | ) | |
| PEREZ J. MORALES, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant/Movant. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Defendant Perez J. Morales has moved to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [Record No. 151] He claims that collateral relief should be granted because his Court-appointed attorney provided ineffective assistance with respect to a number of matters. However, after reviewing each claim, the Court finds that the relief requested in not appropriate. As a result, the defendant's motion will be denied.

**I.**

On January 3, 2012, local police officers arrested an individual on methamphetamine charges in Louisville, Kentucky. [Record No. 1] The individual cooperated with law enforcement and admitted receiving the drugs at 128 Kentucky Street in Shelbyville, Kentucky. Police decided to perform a "knock and talk" at the subject residence. After receiving permission to enter the home, Shelbyville police detectives encountered Martel Jaimes Alaniz. Alaniz immediately claimed ownership of all drugs and weapons located within the residence. He then proceeded to reveal the location of 1.7 kilograms of crystal methamphetamine, together

-1-

with approximately one gallon of liquid methamphetamine in a back bedroom. During a subsequent search of the residence, police also discovered a rifle and handgun.

The original indictment contained three substantive counts charging Martel Alaniz with knowingly and intentionally possessing with intent to distribute over 500 grams of a mixture or substance containing a detectible amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1) (Count 1); knowingly possessing two firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 922(c)(1)(A)(i) (Count 2); and being a illegal alien while knowingly possessing two firearms affecting commerce in violation of 18 U.S.C. § 922(g)(5)(A) (Count 3). [Record No. 11] On April 6, 2012, a four-count Superseding Indictment was returned for the purpose of adding a conspiracy count and additional defendants, including Morales.

Count 1 of the Superseding Indictment charged:

Beginning on or about a day in December 2011, the exact date unknown, and continuing through on or about January 3, 2012, in Shelby County, in the Eastern District of Kentucky, and elsewhere

**Martel Jaimes Alaniz,**
**Alfonson Jaimes Alaniz,**
**Ismael R. Enriquez, and**
**Perez J. Morales**

did conspire together and with others to knowingly and intentionally distribute 500 grams or more of a mixture or substance containing a detectible amount of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1), all in violation of 21 U.S.C. § 846.

[Record No. 21][1]  If convicted of this charge, the defendants faced a term of incarceration of not

less than 10 years imprisonment nor more than life, a fine of not more than $10,000,000.00, and

a term of supervised release of not less that five years nor more than life.

A pretrial conference was scheduled for June 5, 2012. [Record No. 29]  However, shortly

before the hearing co-Defendant Martel Alaniz moved the Court to be rearraigned for the

purpose of entering a guilty plea to Counts 1 and 3 of the Superseding Indictment.  [Record No.

34]  On June 6, 2012, Defendant Martel Alaniz entered a guilty plea to those counts.  [Record

No. 57]

Co-Defendant Alfonso Alaniz[2] initially appeared for arraignment on June 13, 2012.  At

the time of this appearance, trial was scheduled to begin on August 14, 2012, with a pretrial

conference set for July 31, 2012.  [Record No. 41]  Defendant Morales was transferred from state

custody, via a writ of habeas corpus ad prosequendum.  [Record Nos. 52, 55]  He initially

appeared for arraignment on August 13, 2012. [Record No. 72]  Due to Morales' late appearance

before the Court, trial was subsequently continued until October 2, 2012. [Record No. 70]

Likewise, the sentencing hearing of co-Defendant Martel Alaniz was continued until November

13, 2012, in the event his cooperation was needed during the trial of the Alfonso Alaniz and

Morales. [Record No. 75]  However, neither of the remaining defendants proceeded to trial.

On September 14, 2012, Defendants Alfonso Alaniz and Morales filed motions to be

rearraigned on the Superseding Indictment. [Record Nos. 80 and 81]  While Alfonso Alaniz's

motion pertained to Count 1, Morales moved to be rearraigned on a lesser included offense

---

[1]      Defendant Ismael Enriquez was never arrested and remains a fugitive.

[2]      Alfonso Jaimes Alaniz is the brother of Martel Jaimes Alaniz.

contained in Count 1. Alfonso Alaniz had second thoughts when he appeared on September 18, 2012, to enter a guilty plea.[3] As a result, his trial date was reinstated. [Record No. 86] But on September 25, 2012, he again moved for rearraignment. [Record No. 89]

On September 27, 2012, Moralez entered a guilty plea to a lesser included offense contained in Count 1 of the Superseding Indictment which charged him with possessing with intent to distribute 50 grams or more of a mixture or substance containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. [Record No. 93][4] During the September 27, 2012, hearing, Morales admitted that the following facts were accurate and could be proven beyond a reasonable doubt if the matter proceeded to trial:

> On January 3, 2012, the Jeffersontown (Kentucky) Police Department (JPD) made an arrest of the defendant and another individual in Louisville, Kentucky. Immediately prior to the arrest, officers observed both individuals making movements near the center of the front seat of the vehicle, near the console. Following the arrest, a search was conducted on the vehicle, and in the center console approximately 14.5 ounces of a substance containing meth was recovered. The passenger was identified as Perez Morales, defendant herein.

> Morales was Mirandized and expressed [a] desire to cooperate. In the course of his cooperation he described a possible subject/stash house in Shelbyville. SPD conducted a knock and talk, where they found a man named Martel Jaimes Alaniz. Martel Alaniz stated that everything in the home was his, and that he wanted to take responsibility. Alaniz offered that he had drugs and guns in the house, and took Nunez to his bedroom where he showed officers the drugs and guns and gave verbal consent to search.

---

[3]     The United States Marshal Service failed to transport Morales to his change of plea hearing scheduled for September 18, 2012. [Record No. 84] As a result, the hearing was continued until September 27, 2012. [Record No. 85]

[4]     Alfonso Alaniz also entered a guilty plea to the lesser included offense charged in Count 1 of the Superseding Indictment (*i.e.*, possession with intent to distribute fifty grams or more of a mixture or substance containing a detectible amount of methamphetamine). [Record No. 98]

> Additionally, Morales stated he also knew that Alex Alaniz, Martel's brother, was involved in drugs, and acknowledges that the baggie in his possession that night originated with Alex. Morales also informed the police about a possible "stash house" in Jefferson County where money may be stored. The material that was recovered was in fact a substance containing methamphetamine.

[Record No. 94] Thus, by the time of his appearance before this Court, Morales had already confessed to his involvement in drug activities and was connected to at least 14.5 ounces of methamphetamine. However, by virtue of his plea to the lessser included offense in Count 1, he was able to avoid the otherwise applicable mandatory minimum ten-year term of incarceration.

In exchange for the concessions given to Morales, the government received a number of benefits, some of which are outlined in paragraphs 7 and 8 of his written Plea Agreement.

> 7. The Defendant [Morales] will not file a departure motion pursuant to U.S.S.G. Chapter 5, Parts H or K.

> 8. The Defendant waives the right to appeal and the right to collaterally attack the guilty plea, conviction, and sentence, including any order of restitution.

[*Id.*] In addition to waiving his appellate rights, Morales acknowledged in paragraph 10 of the Plea Agreement that by pleading guilty, he would likely be removed from the United States following service of his sentence due to his status as an illegal alien.

Based on the drug quantity attributed to Morales (between 350 grams and 500 grams of a mixture or substance containing a detectible amount of methamphetamine), his Base Offense Level was determined to be 30. However, after receiving a two-level reduction for his role in the offense and a three-level reduction for acceptance of responsibility, Morales Total Offense Level was reduced to 25. [PSR, ¶¶ 14-22] Morales had two alcohol related convictions, resulting in two criminal history points. Therefore, he was placed in Criminal History Category

II for purposes of determining his non-binding guideline range. [PSR, ¶¶ 25-29] As discussed more fully below, Morales' criminal history score disqualified him for application of the safety valve under the United States Sentencing Guidelines. Based on these calculations, Morales faced a guideline range of 63 to 78 months imprisonment at the time of sentencing and was also subject to a mandatory minimum term of incarceration of 60 months. [PSR, ¶¶ 42-43]

Pursuant to the parties' plea negotiations, the Assistant United States Attorney filed a motion seeking a downward departure from the defendant's guideline range and from the mandatory minimum term of incarceration. [Record No. 122] In relevant part, the government's motion focused on the defendant's cooperation with law enforcement soon after consultation with his attorney. According to the United States,

> [Morales] provided information about his sources of supply as well as others he knows to be involved in the illegal distribution of drugs in both Louisville and Lexington, Kentucky. In this case specifically, the information provided by the defendant pertained to the person who had given him his methamphetamine, his co-defendant. This cooperation likely helped lead directly to the decision of the co-defendant to plead in this case. The information thus far has been largely corroborated and law enforcement believes he was truthful. . . . Therefore, the United States moved the Court to consider a downward departure from the established sentencing guidelines and statutory minimum sentence when imposing the defendant's sentence. We defer to the Court's discretion as to whether a downward departure is appropriate, and respectfully recommend a sentence of 15% less than what the court otherwise would have sentenced . . .

[Record No. 122] The Court granted this motion at the time of the sentencing hearing. [Record No. 128][5]

---

[5]     Morales' sentence of 59 months incarceration reflects an approximate 15% reduction from the middle of his guideline range of 63 to 78 months.

On January 23, 2013, Morales was sentenced to a term of incarceration of 59 months, followed by a term of supervised release of four years. While the defendant's status as an illegal alien disqualified him for participation in the BOP's RDAP program, the Court nevertheless recommended that he participate in any available drug and alcohol treatment programs "if such is in accord with BOP regulations." [Record No. 136]

Morales kept part of his bargain with the United States in that he did not file an appeal after being sentenced to a term of incarceration of 59 months. However, on September 16, 2013, he violated his Plea Agreement by filing the present motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [Record No. 151]

The United States responded to Morales' § 2255 motion on December 9, 2013. [Record No. 157] After obtaining permission from the Court, the government included the affidavit of Morales' trial counsel, Matthew Malone, which refutes several of Morales' claims. In relevant part, the affidavit confirms that:

- Through plea negotiations, Malone was able to obtain the government's agreement to allow Morales to enter a plea to the lesser charge contained in Count 1 of the Superseding Indictment. As a result, Morales received a very favorable bargain which allowed him to avoid a ten-year mandatory minimum term of incarceration.

- At sentencing, Morales received a minor role adjustment pursuant to U.S.S.G. § 3B1.2.

- Based on his cooperation regarding the investigation and prosecution of others, the United States moved the Court for a sentence reduction under U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e), allowing the Court to consider a sentence below the otherwise required five-year mandatory term of incarceration.

- Malone fully reviewed the terms and conditions of the written Plea Agreement – including the waiver of the right to file a Notice of Appeal or collaterally attack the guilty plea, conviction or sentence – with Morales on at least three occasions

before the sentencing hearing (September 7, 2012, September 10, 2012, and September 27, 2012). On each occasion, Malone used a Spanish-speaking interpreter to better communicate with Morales. This was in addition to the Court's review of the waiver provisions of the Plea Agreement during the change of plea hearing.

- Morales did not request that Malone file a Notice of Appeal following the sentencing hearing.

- It was not necessary for Malone to arrange a proffer meeting with the Assistant United States Attorney because Morales had more than one criminal history point and, therefore, did not qualify for the safety valve provision of the sentencing guidelines. Malone discussed this fact with Morales on December 14, 2012.

- While Malone did not challenge the quantity of drugs attributed to Morales, the defendant actually received a benefit regarding the drug quantity in that the government did not seek to attribute more drugs to him. In short, there was no lesser amount available which could be attributed to him under the facts presented. Morales was a passenger in a vehicle with 14.5 ounces of methamphetamine which was being delivered to an address in Louisville, Kentucky.

- Morales benefitted by not having purity tests performed on the methamphetamine found in the subject vehicle which could have resulted in a higher guideline range and ultimate sentence.

- Morales' argument that his counsel was ineffective for failing to seek a variance under 18 U.S.C. § 3553(a) at the time of sentencing is misplaced, because his attorney filed a motion for a downward variance [Record No. 118] but that motion was denied by the Court.

- Notwithstanding Morales' claim to the contrary, Malone sought – and the Court granted – his request for a minor role reduction under the United States Sentencing Guidelines.

- The issue of whether to seek a minimal – as opposed to a minor – role adjustment was discussed with the Assistant United States Attorney, the United States Probation Officer responsible for preparing the Presentence Investigation Report ("PSR"), and with the defendant. Following these discussions, Morales agreed to seek a minor role adjustment.

- Morales' case did not fall outside the heartland of cases involving other deportable aliens. Therefore, a variance was not appropriate for this reason.

- Contrary to Morales' claims, the Rule 11 plea colloquy demonstrates that Morales voluntarily, knowingly, and intelligently enter a guilty plea.

[Record No. 157-2]

Although Morales was granted leave to file a reply to the government's response, no reply has been filed.

## II.

Title 28 of the United States Code § 2255 authorizes a prisoner in custody under the sentence of a federal district court to "move the court which imposed the sentence to vacate, set aside or correct the sentence" on the ground that it "was imposed in violation of the Constitution or laws of the United States . . . ." 28 U.S.C. § 2255(a). To obtain relief under this statutory section, a defendant must allege and prove by a preponderance of evidence that: (1) his conviction resulted from an error of constitutional magnitude; (2) his sentence was imposed outside the statutory limits; or (3) an error of fact or law occurred that was so fundamental as to render the entire proceedings invalid. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003), *cert. denied*, 540 U.S. (2004); *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).

When asserting a constitutional claim based on ineffective assistance of counsel, a defendant must prove both deficient performance and prejudice by a preponderance of the evidence. *See Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). To establish the first prong of the *Strickland* test, a defendant "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Under the second prong, a defendant is

required to demonstrate that "but for" his counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. *Id.* at 694.

In evaluating counsel's performance, the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689; *accord United States v. Cavitt*, 550 F.3d 430, 400 (5th Cir. 2008). Counsel's deficient performance is prejudicial if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* And when a claim of ineffectiveness is raised in the context of a plea agreement, the movant must demonstrate that "but for" his counsel's errors, he "'would not have pleaded guilty and instead would have insisted on going to trial.'" *United States v. Wynn*, 663 F.3d 847, 851 (6th Cir. 2011) (quoting *Short v. United States*, 471 F.3d 686, 691-92 (6th Cir. 2006)).

Here, Morales asserts that his trial counsel was ineffective because he failed to: (i) file a notice of appeal following entry of judgment; (ii) arrange for a proffer meeting with the government to satisfy the "safety valve" requirement; (iii) negotiate more favorable terms regarding his written Plea Agreement; (iv) file a motion seeking a minor role reduction to reflect his involvement as a "mule" in the drug conspiracy; (v) challenge the quantity of drugs attributable to him; and (vi) seek a downward departure based on his status as a deportable alien. As discussed more fully below, all of these arguments are all without merit.

### A. Morales Waived The Right To Collaterally Attack His Guilty Plea, Conviction And Sentence.

Before addressing the substance of his claims, the Court must consider the effect of Morales' waiver of the right to collaterally attack the guilty plea, conviction and sentence.[6] If valid, the waiver extends to claims of ineffective assistance of counsel. *Davila v. United States*, 258 F.3d 448, 450-51 (6th Cir. 2001). The waiver, however, would not extend to claims that the provision itself was the result of ineffective assistance of counsel. In other words, if Morales is able to demonstrate that he was mislead regarding the waiver provision or that his plea agreement was the result of ineffectiveness on the part of his attorney, his substantive challenges would not be barred. In the present case, the Court concludes that Morales' guilty plea was knowing and voluntary and that he fully understood all terms and conditions of the written Plea Agreement, including the effect of the waiver of right to collaterally attack the guilty plea, conviction, and sentence.

The language of Morales' Plea Agreement contains a clear and unambiguous waiver of the right to collaterally attack the defendant's guilty plea, conviction, and sentence imposed. The potential penalties were clearly explained to the defendant by the Court before his guilty plea was accepted. Additionally, Morales stated that he understood that neither the Court nor his counsel could accurately predict the guideline range which would be applicable in his case until the PSR was completed and all objections resolved. Further, Morales agreed in writing that the parties' recommendations regarding guideline calculations would not be binding on the Court.

___

[6] Waiver is the "intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (internal quotation marks omitted). Constitutional rights may be waived as long as the defendant does so knowingly and voluntarily. *United States v. Ashe*, 47 F.3d 770, 775-76 (6th Cir. 1995).

And he acknowledged that the written Plea Agreement contained all of the terms and conditions agreed upon by the parties. There were no undisclosed terms and Morales stated under oath that his guilty plea was not the result of threats or force of any kind.

"'Solemn declarations in open court carry a strong presumption of verity, and the subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the records are wholly incredible.'" [Record No. 48, p. 13 (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)0; *see also United States v. Rennick*, 219 F. App'x 486, 489 (6th Cir. 2007).] Here, Morales' admissions at his re-arraignment, his signed plea agreement, and the affidavit of his counsel establish that the defendant understood the contents of the agreement, and the rights he was giving up by entering into the agreement.[7] Additionally, the drug quantity was not disputed and it would have been specious to assert otherwise at the time of the sentencing hearing.

Because Morales has not demonstrated that his attorney was ineffective in negotiating the terms of the Plea Agreement, including the waiver of his right to collaterally attack the guilty plea, conviction and sentence, his substantive arguments are foreclosed. Notwithstanding this finding, the Court will proceed to address the merits of Morales' claims.

**B.     The Affidavit of Counsel Demonstrates That He Did Not Request That A Notice Of Appeal Be Filed Following Entry Of The Judgment.**

Morales asserts that his attorney provided ineffective assistance by failing to file a Notice of Appeal on his behalf following the sentencing hearing. In response, the United States has

---

[7]     The Court is mindful that it must liberally construe the defendant's pleadings; however, it is not required to accept as true factual assertions that are clearly false. While truth may be the first casualty of war, it also tends to suffer grievously on too many occasions in § 2255 motions.

submitted the affidavit of Matthew Malone which refutes this assertion. And while Morales was

given time to submit a reply to this affidavit, he has failed to do so. Further, because Morales

waived the right to file a direct appeal challenging his guilty plea, conviction and sentence, any

appeal would likely have been dismissed by the United States Court of Appeals for the Sixth

Circuit. And although Morales' assertion does not have any factual support, he cannot show that

he was prejudiced by the failure to file a Notice of Appeal.

### C.    Morales Did Not Qualify For Application Of The Safety Valve.

If applicable, the safety valve provision of the United States Sentencing Guidelines

provides for a two point reduction to the Base Offense Level of a defendant's guideline

calculation. *See* U.S.S.G. 2D1.1(b)(16) ("If the defendant meets the criteria set forth in

subdivisions (1)-(5) of subsection (a) of §5C1.2 . . . decrease by **2** levels.") To qualify for the

safety valve, the defendant must demonstrate that he:

(1)  does not have more than one criminal history point;

(2)  did not use violence or credible threats of violence or possess a firearm or
other dangerous weapon (or induce another participant to do so) in connection
with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) was not an organizer, leader, manager, or supervisor of others in the offense
and was not engaged in a continuing criminal enterprise; and

(5) not later than the time of the sentencing hearing, has truthfully provided to the
Government all information and evidence he has concerning the offense or
offenses that were part of the same course of conduct or common scheme or plan.

U.S.S.G. § 5C1.2

Morales' argument that his attorney was ineffective by failing to set up a proffer meeting with the government so that he could satisfy the fifth prong of the safety valve ignores the fact that he did not meet the first prong. It is undisputed that Morales had two criminal history points. Therefore, his argument is misplaced.

Based on the acknowledged drug amount that Morales possessed at the time of his arrest, the defendant faced a mandatory minimum term of imprisonment of five years. Title 18 of the United States Code permits a district court to consider a lesser term of incarceration under two circumstances. First, in the event a defendant qualifies for the safety valve, the court may impose a sentence "without regard to any statutory minimum sentence." 18 U.S.C. § 3553(f). Additionally, subsection (e) of the same statutory section provides that, "[u]pon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect the defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense." 18 U.S.C. § 3553(e). Thus, while Morales did not qualify for the safety valve, his cooperation was nevertheless rewarded by the United States' motion for substantial assistance.

**D.     Morales' Claim That His Attorney Did Not Negotiate Favorable Terms To His Plea Agreement Is Not Supported By The Record.**

A guilty plea is valid if entered voluntarily and intelligently. *See Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005). In making this determination, the Court examines the totality of the circumstances. *See Brady v. United States*, 397 U.S. 742, 749 (1970); *United States v. Ko*, 485 F. App'x 102, 104 (6th Cir. 2012). As outlined above, Morales' guilty plea is valid. He has not

demonstrated any reason for the Court to conclude otherwise. Further, the waiver provision of his written Plea Agreement is binding and enforceable.

While Morales argues that his attorney should have negotiated a binding plea agreement, there is no reason to believe that the Assistant United States Attorney responsible for prosecuting the case was willing to propose such an arrangement. In light of the substantial evidence against the defendant, to suggest otherwise is to ignore the obvious. Additionally, there is no reason to believe that, even if a binding plea agreement had been proposed, it would have been accepted by the Court. To support a claim of ineffective assistance of counsel, a defendant must offer more than mere hope or speculation. Here, Morales has offered nothing to support this particular claim. Instead, contrary to Morales' argument, the written Plea Agreement was very favorable to the defendant under the facts presented.

> **E.** **Morales Actually Received A Role Reduction For Being A Minor Participant in the Drug Conspiracy.**

Morales argument that his attorney was ineffective for failing to request a role reduction under U.S.S.G. § 3B1.2(b) is based on the false assumption that the defendant did not receive a role reduction. In his motion, Morales mixes the terms "minor" and "minimal" participant. Having reviewed this matter, the Court concludes that Morales was not entitled to a four-level reduction as a minimal participant. Because he was only assessed responsibility for the drugs found in the vehicle at the time of his arrest, any reduction for his role was limited to his involvement in those drugs.

However, as outlined in paragraph 17 of the defendant's PSR, Morales received a two-level reduction from the base offense level based on the determination that he played a minor

role in the methamphetamine conspiracy. This reduced his Base Offense Level from 30 to 28.

Morales also received an additional three-level reduction under U.S.S.G. § 3E1.1(a) and (b)

based on his acceptance of responsibility. As a result, his Total Offense Level was reduced to

25. Combined with a Criminal History Category of II, Morales had a non-binding guideline

range of imprisonment of 63 to 78 months. In short, Morales' contention that his attorney was

ineffective for failing to request a minor role reduction is meritless.

> **F.  Morales' Attorney Was Not Ineffective For Failing To Contest The Drug Quantity To Which He Agreed And Which Was Based Only On Drugs Found In His Possession At The Time Of His Arrest.**

A defendant is not required to volunteer or admit to conduct beyond the offense of

conviction. Under such circumstances, the defendant may still qualify for acceptance of

responsibility credit under U.S.S.G. § 3E1.1. However, "a defendant who falsely denies, or

frivolously contests, relevant conduct that the court determines to be true has acted in a manner

inconsistent with acceptance of responsibility." U.S.S.G. 3E1.1, App. Note 1 (A).

Morales argues that his attorney was ineffective for failing to contest the quantity of

methamphetamine attributed to him (i.e., 14.5 ounces or 411.075 grams). While there was no

basis for contesting this amount, a possibility existed that additional drugs could have been

attributed to Morales. However, by frivolously contesting this amount, in all likelihood, Morales

would have lost all credit for acceptance of responsibility. Further, taking a position contrary

to the evidence (and the defendant's earlier admissions) could have jeopardized the motion

Morales received under U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e). By losing credit for

acceptance of responsibility, Morales' Total Offense Level would have increased to 28, with a

corresponding increase in his guideline range of imprisonment to 87 to 108 months.[8] And there is little likelihood that Morales would have been sentenced below this non-binding range. The facts simply would not have justified such a reduced sentence under 18 U.S.C. § 3553(a).

Morales also asserts that the Court did not make a finding of the drugs attributed to him and that this failure merits the relief requested. Morales is wrong for two primary reasons. First, Morales agreed to the drug quantity attributed to him (*i.e.*, 14.5 ounces) through his written Plea Agreement. Second, at the time of the sentencing hearing, the Court adopted the facts outlined in the PSR as its findings. Paragraph 9 of the PSR indicates that 14.5 ounces of methamphetamine is attributed to Morales and that this quantity equates to 411.075 grams of the substance. That amount is also reflected in paragraph 14 of the PSR which states, in part, that "Morales' attributable drug quantity involves 411.075 grams of methamphetamine." Simply put, Morales claims to the contrary are refuted by the facts of the case.

### G. Morales' Attorney Actually Sought A Variance From The Applicable Guideline Range Based On His Status As A Deportable Alien.

Section 5K2.0 of the United States Sentencing Guidelines allows a defendant to seek a departure from the otherwise applicable guideline range is he can show a mitigating circumstance of a kind or to a degree that is not adequately taken into consideration by the

---

[8]     At page 13 of his motion, Morales asserts that, with more effective advocacy, the Total Offense Level of his guideline range could have been reduced to 19. This is nothing more than wishful thinking on Morales part. There is no factual basis to support a Base Offense Level of 26 based on the quantity of drugs found in the vehicle and attributed to Morales. To apply this Base Offense Level, the Court would need to have found that the drug quantity attributed to Morales was between 50 and 200 grams of a mixture or substance containing a detectible amount of methamphetamine. Here, slightly over 411 grams was found in the vehicle. Also, for the reasons discussed above, Morales was given a role reduction and maximum credit for acceptance of responsibility. However, he did not receive a reduction under the safety valve due to his criminal history score.

Sentencing Commission in formulating the guidelines.  Further, the defendant must demonstrate

that, in light of this mitigating circumstance, a lower sentence should be imposed to advance the

objectives of 18 U.S.C. § 3553(a)(2).  In exchange for concessions made by the United States,

parties often bargain away the right to seek a variance under Chapter 5, Part K of the guidelines.

That occurred here.  As specified in paragraph 7 of his written Plea Agreement, Morales agreed

that he would not "file a departure motion pursuant to U.S.S.G. Chapter 5, parts H or K."

[Record No. 132]

Morales asserts that his attorney rendered ineffective assistance at his sentencing hearing

by failing to ask the Court for a downward departure based on his status as an illegal alien under

the above guideline provision.  Again, given that an attorney has no obligation to make legally

baseless arguments or arguments in violation of the terms of the written Plea Agreement, his

contention that Malone was ineffective for failing to argue for an "outside the heartland"

exception under U.S.S.G. § 5K2.0 is without merit.[9]  For this reason, the defendant has failed

to show that deficient performance under the first prong of the *Strickland* inquiry.[10]

But even assuming that counsel's performance was deficient in any of the ways Morales

has claimed, the defendant cannot show any prejudice stemming from the alleged deficient

---

[9]     Malone attempted to side-step the waiver provision of the Plea Agreement by filing a motion seeking
a variance under 18 U.S.C. § 3553(a)(2) which focused on: (i) the fact that Morales came to the United States
illegally to help support his family in Mexico; (ii) his ties to Kentucky; (iii) his limited involvement in the
offense, (iv) his strong work history; and (v) his modest criminal history. [Record No. 118] During the
sentencing hearing, Malone addressed the fact that Morales, as an illegal alien, would not receive the same
benefits as other prisoners due to his illegal status.  The Court considered – but rejected – this argument. [*See*
Record No. 157-2; Affidavit of Matthew Malone, ¶ 8.]

[10]    Morales generally asserts that his attorney had a conflict of interest but has offered absolutely no
support for that assertion.  Based on the record, there is no reason to believe any conflict existed.

performance. To support a meritorious ineffective assistance claim in light of his guilty plea, Morales would need to show "a reasonable probability that, but for counsel's errors, [he] would not have pleaded guilty and would have insisted on going to trial." *Smith*, 844 F.2d at 209; *Juarez*, 672 F.3d at 385. *McAdoo v. Elo*, 365 F.3d 487, 498 (6th Cir. 2004) (quoting *Hill v. Lockhart*, 106 S.Ct. 366 (1985), for the proposition that, "to satisfy the 'prejudice' requirement in a plea agreement context, 'the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"). Morales cannot meet this burden.

To meet the objective burden of establishing prejudice, a movant cannot simply allege that he would not have gone to trial if he had gotten better advise, he must convince the court that a decision to reject the plea bargain would have been rational under the circumstances. *Pilla v. United States*, 668 F.2d 368, 373 (6th Cir. 2012) (quoting *Padilla v. Kentucky*, 130 S.Ct. 1473 (2010)). Here, such an argument cannot be made. Although *pro se* § 2255 motions must be construed liberally, even "mere[ly] conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir.1989). If, for example, Morales had gone to trial instead of pleading guilty, he would have forfeited his eligibility for an acceptance of responsibility adjustment, which reduced his base offense level calculation by 3 points. Further, the United States would have attempted to obtain a conviction to Count 1 which carried a mandatory minimum term of imprisonment of ten years. And two other defendants in the case would have likely testified against Morales. And Morales cannot establish that he had a viable defense. Accordingly, Morales has not shown prejudice in connection with any of his claims.

## H.    Morales Is Not Entitled To A Certificate Of Appealability.

A movant may not appeal a final order in a § 2255 proceeding unless a judge or a circuit justice first issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11 of the Rules Governing Section 2255 Proceedings.  To obtain a certificate of appealability for claims denied on the merits, a movant must make a substantial showing of the denial of a constitutional right.  *See* 28 U.S.C. § 2253(c)(2);  *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When the district court's denial of relief is based solely on procedural grounds, "a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.  "'[W]here a district court has rejected the constitutional claims on the merits, the showing required to [obtain a certificate of appealability] is straightforward: The [movant] must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (quoting *Slack*, 529 U.S. at 484).  Under this standard, a Certificate of Appealability will not be issued. Morales cannot  shown that jurists of reason would find the Court's procedural or substantive conclusions debatable or wrong.

## III.

Morales' entry into the Plea Agreement was knowing and voluntary and not the result of ineffective assistance of counsel.  Based on the clear language of the Plea Agreement, Morales waived the right to file a motion challenging his guilty plea, conviction or sentence. And

notwithstanding the waiver, Morales has not made a substantial showing of the denial of a constitutional right. More specifically, he has not demonstrated that his attorney was ineffective in any respect. Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1.      Defendant/Movant Perez J. Morales' motion to vacate, set aside, or correct his sentence in accordance with 28 U.S.C. § 2255 [Record No. 151] is **DENIED**. Judgment will be entered in favor of the United States with respect to all issue raised in this habeas proceeding.

2.      Defendant/Movant Perez J. Morales' habeas proceeding [Frankfort Civil Action No. 3: 13-7314-DCR-EBA] is **DISMISSED** and **STRICKEN** from the Court's docket.

3.      The Court **DECLINES** to issue a Certificate of Appealability on any issue raised herein. Any request by Defendant/Movant Perez J. Morales for this Court to issue such a Certificate is **DENIED**.

4.      Morales' motion for appointment of counsel [Record No. 151] is **DENIED**.

This 24th day of April, 2014.



Signed By:

*Danny C. Reeves* DCR

**United States District Judge**